## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

———————————————————————

|  |  |  |
|---|---|---|
| FLORENCE ELIZABETH MASON, et al., | : | CIVIL ACTION |
|  | : |  |
| Plaintiffs, | : |  |
|  | : |  |
| v. | : | No.  13-5163 |
|  | : |  |
| THE CITY OF PHILADELPHIA, et al., | : |  |
|  | : |  |
| Defendants. | : |  |

———————————————————————

### MEMORANDUM

**ROBERT F. KELLY, Sr. J.**                         **SEPTEMBER 22, 2014**

        Presently before the Court is Defendants, City of Philadelphia (the "City"), Police

Commissioner Charles Ramsey ("Commissioner Ramsey"), the City of Philadelphia Police

Department (the "PPD"), and "Officers Fleming, Fredricsdorf, Kopecki, Whaley, Tees, Hummel,

Lamdherr, Medycki, Riddick, Long, Kensy and Lackey's" ("Defendant PPD Officers")

(collectively, the "Moving Defendants"), Motion to Dismiss the Complaint of Florence Elizabeth

Mason ("Plaintiff"), in her own right and on behalf of, Vincent T. Mason, Jr., and Crystal

Mason,[1] and Plaintiff's Response.  For the reasons set forth below, this Motion will be granted in

part and denied in part.

## I.    BACKGROUND

        Plaintiff, in her own right and on behalf of, Vincent Jr. and Crystal, initiated this action

_____

        [1]Vincent Mason Jr. ("Vincent Jr.") and Crystal Mason ("Crystal") are Florence Mason's children
who were apparently minors at the time of the incidents at issue.  In a previous Memorandum Opinion,
we dismissed Vincent Jr. and Crystal as Plaintiffs in this action.  (See Doc. No. 55.)

by filing an application to "Proceed In Forma Pauperis" on September 4, 2013.  This Court granted the Motion on September 13, 2013, and on this same day, Plaintiff filed a Complaint naming a long list of Defendants including the following individuals and entities: the Philadelphia Housing Authority ("PHA"); PHA employees, Kelvin A. Jeremiah[2] (President and Chief Operating Officer), Patrick Agnew (Office of PHA Audit and Compliance investigation officer), and Frank McLaughlin (Chief of Investigation of the PHA); the City; the PPD; Commissioner Ramsey; 14th Police District Captain John Fleming; 35th Police District Captain Joseph Fredricsdorf; 14th Police District individual officers Kopeki ("Lt. Kopeki"), Whaley ("Lt. Whaley"), Tees ("Lt. Tees"), Hummel, Lamdherr, Medycki, and "EDT" Miston; 35th Police District individual officers Riddock, Long, Diguisse, Larks, Kensy, Sath, Meril, and Lackey; the Philadelphia Municipal Court Landlord Tenant Civil Division and the Office of the Clerks;[3] John and Jane Does of the Philadelphia Animal Control Unit; "Robert H. Messerman, Esq Law Firm and its employee(s) Earl Smith," Bart E. Levy, Esq., and his law firm; Third Corsa, Inc.; Elaine Luckin; Lenny Luckin; Svetlana Shilomovich; and Kenneth L. Baritz Esq., and the Law Firm of Kenneth L. Baritz & Associates.[4]  See Compl. ¶¶ 8-16.

---

[2]Plaintiff incorrectly identified Mr. Jeremiah as "Kenneth Jeremiah" in her Complaint.

[3]On September 13, 2013, we dismissed the Philadelphia Municipal Court Landlord Tenant Civil Division as a party to this action with prejudice.  (See Doc. No. 2.)

[4]In previous Memorandum Opinions, we dismissed all causes of action against Defendants, Kenneth L. Baritz Esq., and the Law Firm of Kenneth L. Baritz & Associates; the Robert Messerman Law Firm and its employees; the PHA; PHA employees, Kelvin A. Jeremiah, Patrick Agnew, and Frank McLaughlin; Bart E. Levy, Esq., and Levy Law LLC; Elaine Luckin; Lenny Luckin; and the Philadelphia Animal Control Unit, and its Officers John and Jane Doe.  (See Doc. Nos. 55, 57, 59, 61, 63.)

Plaintiff's pro se Complaint[5] avers that all Defendants violated her civil rights by malicious prosecution (Count I), selective prosecution (Count II), false arrest (Count III), false imprisonment (Count IV), and excessive force (Count V).  Id. ¶¶ 51-87.  Plaintiff also alleges a "Monell"[6] claim against the City (Count VI), and state law claims against all Defendants of false arrest/false imprisonment (Count VII), malicious prosecution (Count VIII), assault and battery and intentional infliction of emotional distress (Count IX), and loss of consortium (Count X).  Id. ¶¶ 88-103.

Plaintiff contends that:

> [t]he Complaint arises out of a lease agreement for Section 8 housing that the Plaintiffs had with Defendant Shilomovich, and with extreme and outrageous course of conduct in which Shilomovich engaged in conspiracy with the other named Defendants, which involved violations of the Plaintiff's [sic] First, Fourth, and Fourteenth Amendment rights, and included physical assaults, excessive force and unlawful arrests of all of the named Plaintiffs by the named Philadelphia City Police officer defendants, and their unlawful incarceration, and other abuses and acts of mistreatment to which they have been, and continue to be subjected.

Id. ¶ 18.

The essence of the Complaint involves an action for eviction from Plaintiff's "Section 8" housing.[7]  An action for eviction was initiated in the Philadelphia Municipal Court ("Municipal

---

[5]Pro se litigants are entitled to a liberal reading of their filings.  See Ellington v. Cortes, 532 F. App'x. 53, 55 (3d Cir. 2013).

[6]See Monell v. N.Y. City Dept. of Soc. Serv., 436 U.S. 658 (1978).

[7]In another Motion to Dismiss in this action filed by the PHA, which was addressed in a separate Memorandum Opinion, the PHA explained that:

> [T]he Philadelphia Housing Authority did not own the property leased by Plaintiffs from Defendant Third Corsa Inc. and or Elain[e] Luckin.

3

Court") (No. LT-11-01-06-3627) where, on March 14, 2011, the Court entered judgment[8] against

Vincent Mason Sr. and "All Occupants" and for Defendant "Third Corsa (AKA/DBA: Elaine

Luckin)."  See Compl., Ex. A.  The Court issued an order for eviction at 160 E. Meehan Avenue,

Philadelphia, Pennsylvania (the "Property").  Id.  Plaintiff contends that the PPD began efforts to

evict Plaintiff on four separate occasions, which resulted in violations of her rights by the PPD

and the other Defendants.  Id. ¶ 20.

We now will focus on the allegations in the Complaint specifically involving the Moving

Defendants.  Plaintiff avers the following:

> 1. that she "had been arrested and unlawfully restricted of [her]
> liberties without probable cause, and had been subjected to a
> repeated series of physical and verbal abuses by certain of the
> named Defendants of the uniformed armed forces of the
> Philadelphia Police Department";
>
> 2. that "Defendant Shilomovich, Baritz, PHA, Third Corsa, and
> Luckin entered in a conspiratorial agreement with the Philadelphia
> Municipal Court and Philadelphia Police defendants; to have her
> entire family forcefully, strong armed evicted, from [the]
> property";
>
> 3. "Elaine Luckin, Shilomovich, Baritz and Earl Smith had pre-
> planned and arranged for the Philadelphia Police Department to be

---

> Pursuant to the Housing Choice Voucher Program, formally known as
> Section 8 Housing, the leased unit is located by the Housing Voucher
> tenant and the tenant enters into a lease agreement with the landlord.
> PHA provides the tenant with rent subsidy to assist in the payment of the
> rent.  Housing Voucher Landlords are permitted to seek eviction of
> tenants for the tenant's non-payment of their share of the rent.  In the
> case at hand, PHA was not a party to the Philadelphia Landlord-Tenant
> court action filed by Third Corsa against Plaintiff Vincent Mason.

(See PHA Mot. to Dismiss at 4 n.4, Doc. No. 26.)

[8]The Court stated that "[p]ossession [was] granted on the basis of termination of the term and breach of a condition."  See Compl., Ex. A.

present there to effectuate a forced illegal strong arm eviction
carried out on the many occasion by the 14th District Police
Officers under the order of its Lt.'s Kopecki, Whaley and Tees";

4.  on or around September 1, 2011, the PPD "began efforts to
forcefully throw out her and her children out of the Property."
While Plaintiff was at the "Commonwealth Court" attempting to
get an emergency order to stop the eviction, an unknown PPD
officer went to the Property, attempted to force his way into the
Property, and then "terrorized" Plaintiff's daughter Crystal.  The
officer said he would return later.  The unknown officer returned a
short time later with Lt. Kopecki.  Vincent Jr. told Lt. Kopecki that
his family had papers stating that they were legally in the Property.
Lt. Kopecki told Vincent Jr. that they all had to leave the house,
and Vincent Jr. told him he would come out willingly.  Lt. Kopecki
then put Vincent Jr.'s arm behind his back and placed him in
handcuffs, even though he did not resist or show signs of violence;

5.  at this time, Crystal was on the phone with Plaintiff
"screaming" that the PPD was arresting her and her brother, when
an unknown female officer got out of her car and "Jumped kicked"
Crystal in the back causing her face to hit the ground.  Crystal was
then "hog" tied and handcuffed.  PPD officers then entered the
premises and "roughed" up minors in the house, and punched
Vincent Jr. in the stomach.  The officers also "pushed and shoved"
a minor who is autistic and handcuffed another minor child.  In
addition, when Vincent Jr. tried to assist his younger siblings, he
was punched in the face by Lt. Kopecki and forcefully taken away;

6.  Vincent Jr. and Crystal were unlawfully kept for hours at the
35th PPD district where they were found by Plaintiff a day and a
half later;

7.  Plaintiff and her children returned to the Property where they
were unlawfully evicted.  On October 14, 2011, PPD officers again
came to the Property to evict Plaintiff and her children.  Lt. Whaley
and other PPD officers appeared at the Property and demanded that
they leave.  Lt. Whaley then "verbally abuse[d], menace[d], and
threaten[ed]" Plaintiff and her children, and also called her a
'bitch';

8.  Lt. Whaley allowed Defendants, Svetlana Schilomovich, Elaine
Luckin and Lenny Luckin to enter the property and remove her

family's personal property and take such to an undisclosed location
"robbing them" of all their possessions; and

9.  Defendant Schilomovich bribed Lt. Whaley and an Officer
Crenshaw[9] to allow those Defendants to enter the Property and take
Plaintiff's possessions.  Plaintiff witnessed Defendant
Schilomovich pass "rolled up bills" through a car window to the
officers.

Id. ¶¶ 19-20, 25-26, 28, 30-32, 35-44.

As already noted, Plaintiff's allegations arise from the underlying Municipal Court and

Philadelphia County Court of Common Pleas ("Court of Common Pleas") actions.  In the

Municipal Court action, judgment in possession was entered against Vincent Mason, Sr.

("Vincent Sr.")[10] on March 14, 2011.  See id., Ex. A.  On this same date, Plaintiff and Vincent Sr.

appealed this judgment to the Court of Common Pleas seeking supersedeas.[11]  See id., Ex. D.

Supersedeas was granted on this same day.  Id.  However, on June 7, 2011, the appeal was

voluntarily "discontinued" (No. LT-11-01-06-3627).  (See Pl.'s Response, Ex. A.; PHA's Mot. to

Dismiss, Ex. D at 4.)  Upon discontinuance of the appeal, supersedeas was automatically

terminated.[12]

On July 15, 2011, Defendant Third Corsa filed a Writ of Possession in the Municipal

Court, and on August 1, 2011, filed an Alias Writ.[13]  (Id.)  According to the Complaint, Plaintiff

_____

[9]Plaintiff did not name Officer Crenshaw as a Defendant in this action.

[10]It is noted that Vincent Sr., presumably Mason's husband, is not a named party in this action.

[11]Supersedeas is "a writ or bond that suspends a judgment creditor's power to levy execution."
Black's Law Dictionary (9th ed. 2009).

[12]See Phila. Civ. R. 1008(d)(8) ("If an appeal is stricken or voluntarily terminated, any
supersedeas based on it shall terminate").

[13]Alias Writ is "a writ issued after the first had failed."  Black's Law Dictionary (9th ed. 2009).

6

and her family were evicted on September 1, 2011.  Compl. ¶¶ 22, 25.  However, they

subsequently reentered the Property, and on September 19, 2011, Defendant Third Corsa filed a

Petition to reissue the "Alias Writ" and proceed with another lockout.  (See Pl.'s Response, Ex.

A.)  The petition was granted on this date.  (Id.)

　　　Most of the Defendants in this action have filed Motions to Dismiss.[14]  The Moving

Defendants filed their Motion to Dismiss on April 10, 2014.  Plaintiff failed to file a Response

within the fourteen (14) days permitted by Local Rule of Civil Procedure 7(c).[15]  Instead, Plaintiff

filed a number of "Demands."  One such "Demand" was for the appointment of counsel.  (Doc.

No. 31.)  On June 20, 2014, we denied the request for appointment of counsel after considering

the factors enumerated in Tabron v. Grace, 6 F.3d 147, 155 (3d Cir. 1993).  See Mason v. City of

Phila., No. 13-5163, 2014 WL 2804911 (E.D. Pa. June 20, 2014).  Also on this date, we entered

an Order, specifically giving Plaintiff time to respond to the individual Motions to Dismiss that

had been filed up to that time.  (Id.)  With regard to the instant Motion, Plaintiff was ordered to

file a Response on or before July 3, 2014.  (See Doc. No. 37.)  Plaintiff filed an untimely

Response on July 7, 2014.  (Doc. No. 39)  However, such Response appears to be a general

_____

　　　[14]The only Defendants who did not file Motions to Dismiss are Svetlana Schilomovich; and the
Philadelphia Animal Control Unit, and its Officers John and Jane Doe.  However, as noted earlier, we
have already dismissed the Philadelphia Animal Control Unit, and its Officers John and Jane Doe from
this action.  (See Doc. No. 63.)

　　　[15]This Rule states in relevant part that:

　　　　　Unless the Court directs otherwise, any party opposing [a] motion shall
　　　　　serve a brief in opposition together with such answer or other response
　　　　　that may be appropriate, within fourteen (14) days after service of the
　　　　　motion and supporting brief.

E.D. Pa. Local R. 7.1(c).

Response against all Defendants because it does not specifically address the instant Motion to Dismiss.  (See id.)

## II.    STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  Under Rule 12(b)(6), the defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).  In Bell Atl. Corp. v. Twombly, the Supreme Court stated that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  550 U.S. 544, 555 (2007).  Following Twombly, the Third Circuit has explained that the factual allegations in the complaint may not be "so undeveloped that [they do] not provide a defendant the type of notice which is contemplated by Rule 8."  Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008).  Moreover, "it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'"  Id. (alteration in original) (quoting Twombly, 550 U.S. at 563 n.8).  Furthermore, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level."  Id. at 234 (quoting Twombly, 550 U.S. at 555).  "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'"  Id. (quoting Twombly, 550 U.S. at 556).

Notwithstanding Twombly, the basic tenets of the Rule 12(b)(6) have not changed.  The

Knit With v. Knitting Fever, Inc., No. 08-4221, 2009 WL 973492, at *6 (E.D. Pa. Apr. 8, 2009). The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief, not detailed factual allegations.  Phillips, 515 F.3d at 231. Moreover, when evaluating a motion to dismiss, the court must accept as true all well-pleaded allegations of fact in the plaintiff's complaint, and must view any reasonable inferences that may be drawn therefrom in the light most favorable to the plaintiff.  Id.; Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006).  Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## III.   DISCUSSION

### A.  PPD Commissioner Ramsey and PPD Officers Fleming, Fredricsdorf, Lamdherr, Medycki, Riddick, Long, Kensy, and Lackey

Moving Defendants first assert that Plaintiff has failed to state a claim against "Commissioner Ramsey, Captains Fleming and Fredricsdorf, and Officers Lamdherr, Medycki, Riddick, Long, Kensy, and Lackey" because the Complaint does not allege that these individuals had personal involvement in any alleged wrongs against her and her children.[16]  (Defs.' Mot. to Dismiss at 5.)  We agree.

Individual liability will be imposed under 42 U.S.C. § 1983[17] ("§ 1983") only if the state

---

[16]Moving Defendants assert that there are no police officers employed by the City by the names of "Miston," "Diguisse," "Larks," "Sath," or "Meril."  (Defs.' Mot. to Dismiss at 4 n.4.)  Because Plaintiff has failed to give us any information at all as to the identity of these individuals, we dismiss them as Defendants in this action.

[17]Section 1983 reads as follows:

actor played an "affirmative part" in the alleged misconduct.  See Evancho v. Fisher, 423 F.3d

347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998)).

Liability "cannot be predicated solely on the operation of respondeat superior."  Id.  In other

words, defendants in § 1983 civil rights actions "must have personal involvement in the alleged

wrongs . . . shown through allegations of personal direction or of actual knowledge and

acquiescence."  Atkinson v. Taylor, 316 F.3d 257, 271 (3d Cir. 2003); Rode, 845 F.2d at

1207-08.  When a plaintiff merely hypothesizes that an individual defendant may have had

knowledge of or personal involvement in the deprivation of his or her rights, individual liability

will not follow.  See id.

        Here, Plaintiff has failed to allege that any of these individual officers and/or

Commissioner Ramsey had "personal involvement" in any of the actions set forth by Plaintiff in

her Complaint.  See id.  In fact, the Complaint fails to even mention the names of any of these

individuals in any of its Counts.  Accordingly, Commissioner Ramsey and individual PPD

officers Fleming, Fredricsdorf, Lamdherr, Medycki, Riddick, Long, Kensy, and Lackey  are all

dismissed from this action.

        **B.  Lieutenant Kopecki**

        Plaintiff's most serious claims involving the PPD are against Lt. Kopecki.  As outlined

---

                Every person who, under color of any statute, ordinance, regulation,
                custom, or usage, of any State or Territory or the District of Columbia,
                subjects, or causes to be subjected, any citizen of the United States or
                other person within the jurisdiction thereof to the deprivation of any
                rights, privileges, or immunities secured by the Constitution and laws,
                shall be liable to the party injured in an action at law, suit in equity, or
                other proceeding for redress.

42 U.S.C. § 1983.

above, Plaintiff alleges that on September 1, 2011, the PPD began efforts to evict her and her children from the Property.  Compl. ¶ 27.  She contends that Lt. Kopecki was one of the officers at the property on this date, and that he committed several acts, which violated her and her children's rights.  These alleged acts include: (1) forcing his way into the Property; (2) "terrorizing" Plaintiff's daughter Crystal; (3) illegally arresting Vincent Jr.; (4) using excessive force in arresting Vincent Jr.; and (5) punching Vincent Jr. in the stomach when he tried to assist his younger siblings.  Id. ¶¶ 27-31.

Moving Defendants assert that all claims against Lt. Kopecki, including both the § 1983 claims and the state law claims, should be dismissed under the applicable two-year statutes of limitations.  (Defs.' Mot. to Dismiss at 10.)  They argue that Plaintiff filed her Complaint on September 13, 2013,[18] and cannot bring claims on actions which occurred prior to September 13, 2011.  (Id.)  Defendants maintain that Plaintiff's claims against Lt. Kopecki all arise from events that occurred on September 1, 2011.  (Id.)

"The statute of limitations for a § 1983 claim arising in Pennsylvania is two years."  Kach v. Hose, 589 F.3d 626, 634 (3d Cir. 2009); see also McCreary v. Redevelopment Auth. of City of Erie,  427 F. App'x 211, 214 (3d Cir. 2011).  In addition, intentional tort claims brought in Pennsylvania must comply with a two-year statute of limitations.  See 42 Pa.C.S.A. § 5524[19]; see

---

[18]As noted earlier, Plaintiff initiated this action by filing an application to "Proceed In Forma Pauperis" on September 4, 2013.  With this application, she included her Complaint.  While, this Court granted the Motion on September 13, 2013, we consider September 4, 2013, as the date that the Complaint was filed for statute of limitations purposes.

[19]42 Pa. C.S. § 5524 states in relevant part:

The following actions and proceedings must be commenced within two years:

(1) An action for assault, battery, false imprisonment, false arrest, malicious

also McCreary, 427 F. App'x at 214.  We note that "the law of this Circuit (the so-called 'Third

Circuit Rule') permits a limitations defense to be raised by a motion under Rule 12(b)(6), but

only if 'the time alleged in the statement of a claim shows that the cause of action has not been

brought within the statute of limitations.'" Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir.

2002) (quoting Hanna v. U.S. Veterans' Admin. Hosp., 514 F.2d 1092, 1094 (3d Cir.1975)).  In

addition, "Federal law governs a cause of action's accrual date." Kach, 589 F.3d at 634.  A cause

of action "accrues when the plaintiff knew or should have known of the injury upon which [her]

action is based." Sameric Corp. of Del. v. Phila., 142 F.3d 582, 599 (3d Cir. 1998).  "Accrual is

the occurrence of damages caused by a wrongful act- when a plaintiff has a complete and present

cause of action, that is, when the plaintiff can file suit and obtain relief." McCreary, 427 F.

App'x at 214 (quoting Dique v. N.J. State Police, 603 F.3d 181, 185 (3d Cir. 2010)).

Here, it is apparent from the Complaint that Plaintiff clearly and repeatedly alleges that

the actions of Lt. Kopecki all occurred on September 1, 2011, when the PPD first went to the

---

prosecution or malicious abuse of process.

* * * *

(7) Any other action or proceeding to recover damages for injury to person or
property which is founded on negligent, intentional, or otherwise tortious
conduct or any other action or proceeding sounding in trespass, including deceit
or fraud, except an action or proceeding subject to another limitation specified in
this subchapter.

42 Pa.C.S.A. § 5524

Property to evict Plaintiff and her family.  See Compl. ¶¶ 22, 27-32.  While Plaintiff's allegations

in her Complaint against Lt. Kopecki would be sufficient to withstand a Motion to Dismiss at

this stage of the litigation, we cannot ignore the fact that Plaintiff failed to allege her § 1983

claims and state law intentional tort claims against Lt. Kopecki within the applicable statutes of

limitations, having initiated this action on September 4, 2013.  As stated, Plaintiff is clear on the

date that these actions allegedly occurred, and Plaintiff knew or should have known that her

causes of action against Lt. Kopecki accrued on September 1, 2011.  See Sameric Corp. of Del.,

142 F.3d at 599.  Because Plaintiff has failed to bring her § 1983 claims and state law claims of

false arrest and imprisonment, malicious prosecution, assault and battery, intentional infliction of

emotional distress, and loss of consortium against Lt. Kopecki within the applicable two-year

statutes of limitations, these claims against Lt. Kopecki are dismissed.[20]

### C.  Lieutenant Tees

In the Complaint, Plaintiff appears to bring a supervisory liability claim against Lt. Tees.

In her sole claim against him, Plaintiff alleges that "Elaine Luckin, Shilomovich, Baritz and Earl

Smith had pre-planned and arranged for the Philadelphia Police Department to be present there to

effectuate a forced illegal strong arm eviction carried out on the many occasion [sic] by the 14th

---

[20]Plaintiff also names PPD Officer Hummel ("Officer Hummel") as a Defendant in this action.
Plaintiff only specifically mentions any actions on the part of Officer Hummel in one Count of her
Complaint.  She alleges that "[w]hile unlawfully arresting Vincent and Crystal Mason, the Young minor
Child C.M. was being punched on and batter [sic] by one officer later to be known as Hummel, whom
[sic] was verbally taunting him [sic] a 13 year old with other officers."  Compl. ¶ 83.  However,
Plaintiff's claim against Officer Hummel will be dismissed for two reasons.  First, it is apparent from the
Complaint that the alleged actions occurred during the September 1, 2011 eviction.  See Compl. ¶¶ 27-
33.  Accordingly, this claim must be dismissed for failure to bring the claim within the two-year
applicable statute of limitations.  Moreover, this claim is dismissed because Vincent Jr. and Crystal are
no longer Plaintiffs in this action.  Moreover, minor child, "C.M.," was never a Plaintiff.

District Police Officers under the order of its Lt.'s [sic] Kopecki, Whaley and Tees."  Compl. ¶ 25.

This claim against Lt. Tees is dismissed for two reasons.  First, it is apparent from the Complaint that Plaintiff asserts that Lt. Tees allegedly ordered an unlawful eviction on September 1, 2011.  See id. ¶¶ 25-26, 27-32.  Because Plaintiff did not bring this claim against Lt. Tees within the two-year statute of limitations, it must be dismissed.  Second, this claim should also be dismissed for Plaintiff's failure to plead sufficient facts to state a claim for supervisory liability.

To state a claim of supervisory liability against Lt. Tees, Plaintiff must plead that he "directed others to violate [her rights]."  A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004).  In addition, "a plaintiff must allege a causal connection between the supervisor's direction and that violation, or, in other words, proximate causation."  Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010).  "Proximate causation is established where the supervisor gave directions that the supervisor 'knew or should reasonably have known would cause others to deprive the plaintiff of her constitutional rights.'"  Id. (quoting Conner v. Reinhard, 847 F.2d 384, 397 (7th Cir.1988)).  The Court in Santiago opined that "[p]articularly after Iqbal,[21] the connection between the supervisor's directions and the constitutional deprivation must be sufficient to 'demonstrate' a 'plausible nexus' or 'affirmative link' between the [directions] and the specific deprivation of constitutional rights at issue."  Santiago, 629 F.3d at 130 (quoting Hedges v. Musco, 204 F.3d 109, 121 (3d Cir. 2000)).

---

[21]See Ashcroft v. Iqbal, 556 U.S. 662 (2009).

14

Therefore, to state a viable claim against Lt. Tees, Plaintiff needed to have pleaded facts "plausibly demonstrating" that he directed the PPD officers to conduct the eviction in a manner that they "knew or should reasonably have known" would cause the PPD officers to deprive her of her constitutional rights.  Id. (quoting Conner, 847 F.2d at 397).

Here, Plaintiff has failed to plead sufficient facts that Lt. Tees ordered the eviction on September 1, 2011, in a manner that Lt. Kopecki and the other PPD officers at the property "knew or should have known" would violate Plaintiff's constitutional rights.  Id.  Accordingly, the supervisory liability claim against Lt. Tees must also be dismissed for this reason.

**D.  Lieutenant Whaley**

**1.  § 1983 Claims**

We will first address Plaintiff's § 1983 claims against Lt. Whaley.  As stated earlier, Plaintiff alleges that all Defendants violated her civil rights by malicious prosecution, selective prosecution, false arrest, false imprisonment, and excessive force.  Moving Defendants assert that Plaintiff has failed to plead facts which plausibly suggest that Lt. Whaley deprived her of a federal right.  (Defs.' Mot. to Dismiss at 11.)  Moving Defendants maintain that Plaintiff "merely allege[s] that Lieutenant Whaley re-evicted them on October 14, 2011, and that he yelled at them during this second eviction."  (Id.)

As stated earlier, Plaintiff avers in her Complaint that on October 14, 2011, the PPD once again returned to the Property and unlawfully evicted her and her children.  Compl. ¶ 35. Plaintiff alleges that Lt. Whaley and other PPD officers appeared at the Property and demanded that she and her children leave.  Id. ¶¶ 36-37.  She claims that Lt. Whaley "verbally abuse[d],

menace[d], and threaten[ed]" her, and called her a 'bitch." Id. ¶¶ 37-40.  Plaintiff also contends

that Lt. Whaley allowed Defendants Shilomovich, Elaine Luckin, and Lenny Luckin to illegally

enter the Property, remove her personal property, and take such property to an unknown location

"robbing" her of all her family's possessions.  Id. ¶ 41.  Plaintiff further alleges that she

witnessed Defendant Shilomovich bribe Lt. Whaley and another officer to allow her to enter the

property and take Plaintiff's possessions.  Id. ¶¶ 43-44.

To prevail in a § 1983 action, Plaintiff must demonstrate that: (1) "the defendant acted

under color of law; and (2) his actions deprived [Plaintiff] of rights secured by the constitution or

federal statutes."  Anderson v. Davila, 125 F.3d 148, 159 (3d Cir. 1997).  We must first ascertain

whether Plaintiff's Complaint has pleaded a violation of a constitutional right.  In re City of

Phila. Litig., 49 F.3d 945, 962 (3d Cir. 1995).  As to the first element, it is undisputed that the

alleged incident occurred while Lt. Whaley was on duty as a member of the PPD, and thus, acted

under color of state law.  See West v. Atkins, 487 U.S. 42, 49 (1988).

The proper analysis regarding Plaintiff's claims under §1983 is whether Lt. Whaley's

actions meet the "shocks the conscience" test as first established by the Supreme Court in Rochin

v. Calif., 342 U.S. 165, 172 (1952).  In Rochin, the Court determined that the forced pumping of

a suspect's stomach offended due process and was conduct "that shocks the conscience" and

violates the "decencies of civilized conduct."  Id. at 172-73.  In County of Sacramento v. Lewis,

523 U.S. 833 (1998), the Supreme Court determined that the "shocks the conscience" standard is

to be applied when a plaintiff alleges that actions taken by a government official violated

substantive due process.  523 U.S. at 845-46.  The Court found that "the core of the concept" of

due process is "protection against arbitrary action" and that "only the most egregious official

conduct can be said to be 'arbitrary in the constitutional sense.'"  Id.  The Court then held that the substantive element of the Due Process Clause is violated by government action only when it "can properly be characterized as arbitrary, or conscious shocking, in a constitutional sense."  Id. at 847; see also United Artists Theatre Cir. Inc. v. Twp. of Warrington, 316 F.3d 392, 399 (3d Cir. 2003); Fagan v. Vineland, 22 F.3d 1296, 1303 (3d Cir.1994) (en banc) ("[T]he substantive component of the Due Process Clause can only be violated by governmental employees when their conduct amounts to an abuse of official power that 'shocks the conscience'").

Here, while Plaintiff does not allege that Lt. Whaley physically assaulted her or even unlawfully arrested her, she does aver allegations against Lt. Whaley which arguably could meet the  "shocks the conscience" test.  See County of Sacramento, 523 U.S. at 845-46.  At this stage of the litigation, we simply do not have enough information about what occurred between Lt. Whaley and Plaintiff on October 14, 2014.  We find that Plaintiff has, therefore, pleaded sufficient facts in her Complaint to withstand a Motion to Dismiss.  Moving Defendants have the option of revisiting these claims later in a motion for summary judgment after a period of discovery.  Thus, Moving Defendants' Motion to Dismiss is denied as to Plaintiff's § 1983 claims against Lt. Whaley.[22]

---

[22]As with Lt. Tees and Lt. Kopecki, Plaintiff appears to bring a supervisory liability claim against Lt. Whaley in that he and these other named officers ordered "strong arm" evictions of Plaintiff and her family which violated her civil rights.  See Compl. ¶ 25.  As explained earlier, to state a viable claim for supervisory liability against Lt. Whaley, Plaintiff needed to have pleaded facts "plausibly demonstrating" that he directed the PPD officers to conduct the eviction in a manner that they "knew or should reasonably have known would cause the PPD officers to deprive her of her constitutional rights." Santiago, 629 F.3d at 130.  Here, Plaintiff has failed to plead sufficient facts that Lt. Whaley ordered the eviction on October 14, 2011, in a manner that Lt. Whaley and the other PPD officers at the property "knew or should have known" would violate Plaintiff's constitutional rights.  Id.  Accordingly, the supervisory liability claim against Lt. Whaley is dismissed.

## 2. State Law Claims

Moving Defendants next assert that Plaintiff's state law claims for false arrest and imprisonment, malicious prosecution, assault and battery, intentional infliction of emotional distress, and loss of consortium against Lt. Whaley should be dismissed because she has not pleaded that their conduct meets any of the elements required to establish any of these causes of action.  (Defs.' Mot. to Dismiss at 11.)

As noted, Plaintiff alleges that Lt. Whaley unlawfully evicted her and her family, and verbally abused her during the eviction.  See Compl. ¶¶ 37-40.  However, Plaintiff has failed to contend that Lt. Whaley arrested her, falsely imprisoned[23] her, or detained her in any way.  Thus, Plaintiff's claims for false arrest and false imprisonment against Lt. Whaley are dismissed.[24]

Next, Plaintiff's claim for malicious prosecution against Lt. Whaley will also be dismissed.  42 Pa.C.S. § 8351(a) states:

> A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings:
>
> (1) He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which

---

[23]Under Pennsylvania law, the "elements of false imprisonment are (1) the detention of another person, and (2) the unlawfulness of such detention."  Renk v. City of Pitts., 641 A.2d 289, 293 (Pa. 1994).

[24]With regard to the loss of consortium claim, Plaintiff only pleaded that a person named Nancy Friel lost the companionship of her husband, Larry Friel, who appears not to be related to this case in any way.  See id. ¶ 103.  Even assuming that Plaintiff intended to plead a loss of companionship with Vincent Sr., Plaintiff has pleaded no facts related to Lt. Whaley regarding this claim.  Thus, this claim is dismissed.

the proceedings are based; and

(2) The proceedings have terminated in favor of the person against whom
they are brought.

42 Pa.C.S. § 8351.  Here, there is no basis for this claim because Lt. Whaley, as a PPD officer,

did not bring proceedings against Plaintiff.  Moreover, Plaintiff has failed to plead that the

proceedings in the Municipal Court initiated by other Defendants in this action were

"terminated" in her favor.  See Compl, Ex. A.  In fact, the Municipal Court docket indicates that

the proceedings in that Court resulted in favor of Defendant Third Corsa.  Id.  Accordingly, this

claim is dismissed.

Plaintiff's claim for assault and battery against Lt. Whaley must also be dismissed.  In

Pennsylvania, "[a]ssault is an intentional attempt by force to do an injury to the person of

another, and a battery is committed whenever the violence menaced in an assault is actually done,

though in ever so small a degree, upon the person."  Renk, 641 A.2d at 421.  A battery is defined

as a "harmful or offensive contact" with the person of another.  C.C.H. v. Phila. Phillies, Inc.,

940 A.2d 336, 340 (Pa. 2008).  Plaintiff has failed to allege any facts that, if true, would establish

that Lt. Whaley committed either of these torts.  Plaintiff does not allege that Lt. Whaley

attempted "by force" to physically injure her; nor, does she allege that Lt. Whaley had any

physical contact with her.  See Compl. ¶¶ 37-40.  Plaintiff has failed to plead a single element of

assault or battery against Lt. Whaley; therefore, these claims are dismissed.

Finally, we address Plaintiff's claim for intentional infliction of emotional distress against

19

Lt. Whaley.[25]  To prove a claim of intentional infliction of emotional distress, the following

elements must be established: (1) the conduct must be extreme and outrageous; (2) it must be

intentional or reckless; (3) it must cause emotional distress; and (4) that distress must be severe.

Hoy v. Angelone, 691 A.2d 476, 482 (Pa. Super. 1997).  Moreover, the conduct:

> must be so outrageous in character, and so extreme in degree, as to go
> beyond all possible bounds of decency, and to be regarded as atrocious,
> and utterly intolerable in any civilized society . . . [I]t has not been enough
> that the defendant has acted with intent which is tortious or even criminal,
> or that he has intended to inflict emotional distress, or even that his
> conduct has been characterized by "malice," or a degree of aggravation
> that would entitle the plaintiff to punitive damages for another tort.

Reardon v. Allegheny College, 926 A .2d 477, 488 (Pa. Super. 2007) (quoting Hoy, 720 A.2d at

754).  Here, as with Plaintiff's civil rights claims against Lt. Whaley, we find that Plaintiff has

sufficiently pleaded a claim of intentional infliction of emotional distress at this stage of the

litigation to withstand a Motion to Dismiss.  This issue may also be revisited in a motion for

summary judgment if the Moving Defendants decide to file such.  Accordingly, Moving

Defendants' Motion to Dismiss this claim against Lt. Whaley is denied.

---

[25]We note that Lt. Whaley is not immune from liability under the Sovereign Immunity Act.  See 42 Pa. C.S. §§ 8521-8528.  Under 42 Pa. C.S. § 8550, an employee is not protected by a municipality's immunity if his act constitutes a crime, actual fraud, actual malice, or willful misconduct.  Schnupp v. Port Auth. of Allegheny Cty., 710 A.2d 1235, 1238 (Pa. Cmwlth. 1998); Lancie v. Giles, 572 A.2d 827, 830 (Pa. Cmwlth. 1990).  The Pennsylvania Commonwealth Court has held "that willful misconduct in this context is synonymous with 'intentional tort.'"  King v. Breach, 540 A.2d 976, 979 (Pa. Cmwlth. 1988).  Here, because Lt. Whaley is alleged to have committed intentional and willful misconduct, he is not immune from liability.

### E. The City[26]

Plaintiff avers in her Complaint that "Defendants' [sic] developed and maintained policies, practices and customs exhibiting deliberate indifference to the Constitutional right of persons within the geographic and jurisdictional limits of Philadelphia, which caused violations of Plaintiffs' constitutional rights." Compl. ¶ 89. Plaintiff further alleges that "[s]pecifically, Defendants failed to adequately and properly supervise and train [sic] in various aspects of law enforcement." Id. ¶ 90.

"A municipality cannot be held liable solely because it employs a tortfeasor." Monell, 436 U.S. at 691. Instead, the plaintiff must assert that an actual policy or custom of the municipality was the cause of the constitutional deprivation. Id. In order to sufficiently allege "custom" for Monell purposes, a plaintiff must allege that the "practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law." Id. A government policy or custom can be established in two ways. Policy is made when a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action" issues an official proclamation, policy, or edict. Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986). A course of conduct is considered to be a "custom" when, though not authorized by law, "such practices of state officials [are] so permanent and well settled" as to virtually constitute law. Monell, 436 U.S. at 690; see also Andrews v. City of Phila., 895 F.2d

---

[26]It is noted that Plaintiff does not name the City as a Defendant. She does name the City in the caption of her Count VI that raises Monell claims. Given Plaintiff's pro se status, we assume that she intended to sue the City rather than the PPD. Plaintiff does list the PPD under this caption as well. However, a police department does not constitute a proper defendant under § 1983. See Martin v. Red Lion Police Dep't, 146 F. App'x 558, 562 n.3 (3d Cir. 2005). Accordingly, if Plaintiff intended to sue the PPD, such claim is dismissed.

1469, 1480 (3d Cir. 1990).

Alternatively, a plaintiff can also plead a <u>Monell</u> claim "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." <u>City of Canton v. Harris</u>, 489 U.S. 378, 387-88 (1989) (for liability to attach under a failure to train theory, a municipality's failure to train its employees must reflect a deliberate or conscious choice by the municipality such that one could call it a policy or custom). In order for a municipality's failure to train to be actionable under § 1983, however, it must amount to "deliberate indifference" to the rights of the persons with whom police officers come into contact, and it must be shown to be a part of city policy. <u>Id.</u> at 389-390. The Court stated in <u>Torres v. City of Allentown</u>, No. 07-1934, 2008 WL 2600314 (E.D. Pa. June 30, 2008), that "[o]ur liberal notice pleading standard will not be satisfied by a mere allegation that a training program represents a policy for which a municipality is responsible, but rather, the focus must be on whether the program is adequate to the tasks the particular employees must perform." <u>Torres</u>, 2008 WL 2600314, at *5 (citing <u>City of Canton</u>, 489 U.S. at 389-90).

Moreover, a complaint that "amount[s] to a mere recitation of the . . . elements required to bring forth a <u>Monell</u> claim [is] insufficient to survive a motion to dismiss." <u>Butler v. City of Phila.</u>, No. 11-7891, 2013 WL 5842709, at *2 (E.D. Pa. Oct. 31, 2013). Instead, a complaint must include "specific allegations referencing the conduct, time, place, and persons responsible for any official municipal policy or custom." <u>Torres</u>, 2008 WL 2600314, at *5 (citing <u>Evancho</u>, 423 F.3d at 353).

Here, Plaintiff's Complaint is completely devoid of facts to support her allegations against the City. The Complaint lacks any specific factual allegations referencing the conduct,

time, place, and persons responsible for any official municipal policy or custom endorsing the PPD police officers' conduct.  See Evancho, 423 F.3d at 353.  Further, the Complaint fails to specifically demonstrate how the training programs for the police officers are inadequate or to suggest how the City evinced deliberate indifference to Plaintiff's rights.  Accordingly, we find that Plaintiff has failed to plead a viable Monell claim against the City.  Consequently, her § 1983 claim against the City is dismissed.

## IV.    CONCLUSION

In accordance with the above, we make the following conclusions: (1) all claims against Defendants, Miston, Diguisse, Larks, Sath, and Meril, are dismissed because Plaintiff has failed to offer any information as to the identity of these Defendants; (2) all claims, including both § 1983 and state law claims, against Commissioner Ramsey, and PPD officers Fleming, Fredricsdorf, Lamdherr, Medycki, Riddick, Long, Kensy, and Lackey, are dismissed because liability "cannot be predicated solely on the operation of respondeat superior," and Plaintiff has failed to allege that any of these Defendants had "personal involvement" in the alleged wrongs against her and her children[27]; (3) all claims, including both § 1983 and state law claims, against Lt. Kopecki are dismissed for failure to bring these claims within the applicable two-year statutes of limitations[28]; (4) all claims, including both § 1983 and state law claims, against Officer Hummel are dismissed for failure to bring these claims within the applicable statutes of limitations, and because Vincent Jr. and Crystal are no longer Plaintiffs in this action[29]; (5)

---

[27] See Evancho, 423 F.3d at 353.

[28] See Kach, 589 F.3d at 634; 42 Pa. C.S. § 5524.

[29] See id.

23

Plaintiff's claim for supervisory liability against Lt. Tees is dismissed for failure to bring this claim within the two-year statute of limitation, and for failure to plead sufficient facts to state a viable claim[30]; (6) Moving Defendants' Motion to Dismiss Plaintiff's § 1983 claims against Lt. Whaley is denied; (7) Moving Defendants' Motion to Dismiss the state law claims of false arrest, false imprisonment, malicious prosecution, assault and battery, and loss of consortium against Lt. Whaley is granted; (8) Moving Defendants' Motion to Dismiss the state law claim of intentional infliction of emotional distress against Lt. Whaley is denied; (9) Plaintiff's Monell claim against the PPD is dismissed because a police department does not constitute a proper defendant under § 1983[31]; and (10) Moving Defendants' Motion to Dismiss Plaintiff's Monell claim against the City is granted because Plaintiff has failed to plead a viable Monell claim.[32]

　　　　An appropriate Order follows.[33]

---

[30]See id; see also Santiago, 629 F.3d at 130.

[31]See Martin, 146 F. App'x at 562 n.3.

[32]See Evancho, 423 F.3d at 353.

[33]We note that after our decisions in our previous Memorandum Opinions and our determinations in this instant Motion, there remain only two Defendants in this action- Svetlana Shilomovich and Lt. Whaley.  Moreover, the only claims remaining against Lt. Whaley are § 1983 claims and a state law claim of intentional infliction of emotional distress.  All other claims and all other Defendants are dismissed from this action.  (See Doc. Nos. 55, 57, 59, 61, 63.)